BROADWAY CHRISTIAN CHURCH ET AL., APPELLEES, *v.*
REPUBLIC STEEL CORPORATION, APPELLANT.

[Cite as Broadway Christian Church v. Republic
Steel Corp. (1976), 50 Ohio App. 2d 98.]

(No. 37154—Decided December 13, 1976.)

*Mr. Victor E. DeMarco* and *Mr. James C. Sennett,* for appellant.

*Ms. Ann Aldrich, Mr. Joseph P. Meissner,* and *Mr. Jeffrey H. Olson,* for appellees.

KRENZLER, J. This matter comes before this court on the appeal of Republic Steel Corporation contesting the validity of an order of the Ohio Environmental Board of Review which temporarily prohibits[1] the operation of Republic's new coke oven Battery No. 1 at its Cleveland district plant pending the determination of an appeal before the Board challenging the lawfulness of the operation of Battery No. 1.

In order to understand the present posture of this case, it is necessary to review its history.

Appellant herein is Republic Steel Corporation, hereinafter referred to as Republic. Appellees are the Broadway Christian Church, the Broadway United Methodist Church, the Broadway Retirees Fellowship, the Southwest Civil Association, the Forest Park Association, and the Northern Ohio Lung Association, all hereinafter referred to as Broadway.

---

[1] We emphasize that this decision does not determine (1) the validity of the consent agreement entered into between Republic Steel Corp. and the Director of the Ohio Environmental Protection Agency on July 7, 1976, or (2) the validity of any final order issued by the Environmental Board of Review on the merits of the appeal presently pending before it involving the question of the validity of the consent agreement of July 7, 1976.

The Ohio Environmental Protection Agency and The Ohio Environmental Board of Review will hereinafter be referred to as EPA or Director and Board, respectively.

On October 23, 1974, Republic filed an application for a permit to install a new coke oven battery and began construction at the same time. The Director, by order dated December 23, 1975, denied the permit.[2] Subsequently, permit applications were also denied by the Federal EPA and the City of Cleveland.

On July 7, 1976, Republic and the Director pursuant to R. C. 3704.03(S) entered into a Consent and Abatement Order. The substance of the order is that it will take Republic additional time to construct facilities and implement emission control procedures necessary to comply with the emission limitations. Also, the necessity for obtaining a permit to install Battery No. 1 was waived by the Director, and Republic was held not subject to enforcement action for its failure to obtain such permit to install prior to installation of Battery No. 1.

This order then sets forth a compliance schedule for Republic which Republic must meet within specified times. The purpose of this Consent and Abatement Order was to permit Republic to operate Battery No. 1 while undertaking compliance programs.

On August 6, 1976, Broadway filed a notice of appeal pursuant to R. C. 3745.04 and EBR Reg. Chapter III to the Board challenging the lawfulness of the action of the Director in entering into the Consent and Abatement Order with Republic. On August 11, 1976, Broadway requested a stay of execution of the Director's consent order pending the determination by the Board of the validity of the consent order.[3]

Broadway contended that a stay of execution was necessary because the consent order would permit the operation of Republic's new coke battery without the pollution controls required by law; that Republic was preparing to

---

[2] R. C. 3704.03(F), EBR Reg. 30.

[3] R. C. 3745.04, EBR Reg. 3-10(A).

commence charging said coke battery prior to the determination of the appeal; and that the charging of the new coke battery would result in additional emission of pollutant in a control region which has not yet achieved primary ambient air quality standards.

On August 19, 1976, the Board conducted a hearing on Broadway's motion for an expedited stay[4] which resulted in a stipulation on August 27, 1976, whereby Republic agreed not to charge coal into the new battery until October 5, 1976. Broadway then withdrew its motion.

The merits of Broadway's appeal to the Board were heard beginning September 7, 1976, and continued throughout the month. On September 21, 1976, Broadway renewed the motion for a stay of execution of the consent order because it appeared that a decision on the merits of the appeal would not be reached prior to Republic's announced date for beginning operation of the coke battery.

Hearings took place on the renewed motion for a stay order on October 1, 6 and 7, 1976. On October 8, 1976, the Board granted Broadway's motion to stay the consent order until December 14, 1976.

On October 7, 1976, the day before the issuance of the above-cited order, Republic filed a motion for a bond should a stay be granted.[5] A hearing on the motion for bond was held on October 15, 1976, and the Board granted Republic's motion and ordered Broadway to post a $5,000 bond by October 29, 1976. The Board then continued the next hearing on the appeal from the Consent and Abatement Order until October 27, 1976.

Republic appealed the Board's October 8, 1976, stay order to this court (Case No. 37092) on October 18, 1976. On October 29, 1976, this court issued an order dissolving the October 8, 1976, stay order of the Board on the ground that it was invalid as a matter of law. The Board had issued a stay of execution of the action appealed from but had interrupted immediate determination of the appeal

[4]EBR Reg. 3-11.
[5]EBR Reg. 3-10-1.

by unwarranted continuances in violation of R. C. 3745.04.

The Board subsequently granted a new stay order on November 2, 1976, and ordered Broadway to post bond in the amount of $5,000. The Board's order also stated that it would continue the proceedings in an expedited manner.[6]

On November 3, 1976, Republic filed a notice of appeal to this court from the Board's November 2, 1976, order and challenged the adequacy of the bond and the validity of the stay order. Republic argues that the amount of the bond is inadequate because it does not compensate Republic for its losses during the pendency of the appeal. Republic also argues that the stay order is invalid because there were no compelling reasons to issue the stay order such as are required by Environmental Board Regulation 3-10(A) and that an unjust hardship will result.[7]

Broadway contends that the Board did not abuse its discretion in issuing the stay order because the record demonstrates that the four requirements of *Virginia Petroleum Jobbers Association* v. *Federal Power Commission* (D. C. Cir. 1958), 259 F. 2d 921 were met. Broadway also contends that the amount of the bond does not constitute an abuse of discretion because it is a public interest group and the intent and purpose of the Ohio Environmental Protection Act is to allow members of the public to bring such actions and a high bond would defeat this right.

We will first consider the validity of the stay order. EBR Reg. 3-10 provides as follows:

"EBR-§3-10. *Stays.*

"(A) The filing of an appeal does not automatically suspend or stay execution of the action appealed from. Upon motion by the Appellant, the Board may suspend or stay such execution pending immediate determination of the appeal without interruption by continuances, other than for unavoidable circumstances. Except for compelling reasons justifying a stay, a stay shall be denied.

"(B) A motion for stay may be filed with the Board

[6] R. C. 3745.04.
[7] R. C. 3745.06.

at any time during the proceeding and shall set forth the specific grounds for which it is requested. In granting a stay, the Board may impose such conditions as are warranted by the circumstances including, where appropriate, the filing of a bond or other security."

We have carefully reviewed the transcript of testimony comprising some 4,000 pages and find that Republic built Battery No. 1 without obtaining the permit required by R. C. 3704.03 and EP Reg. 30. Republic applied for a permit on October 23, 1974, and began construction at that time. Its application for a permit was denied by the Director on December 23, 1975. The subsequent Consent and Abatement Order dated July 7, 1976, was made some twenty-one months after the start of construction.

The evidence contained in that portion of the record thus far available to this court demonstrates that the operation of Battery No. 1 would be in violation of state law because such operation would interfere with the attainment of ambient air quality standards, would substantially exceed emission standards and contribute to air pollution.

Further, we are not dealing with an existing source of air pollution which has been in operation and which would be disrupted by the stay order. We are concerned with a new source which was installed without a permit and the operation of which would be in violation of state air pollution laws. There is a clear distinction between a stay order imposed on an existing operating source that would be disrupted and a stay order issued against a new source that has never been operated.[8]

It is our conclusion in view of the foregoing considerations, that there were compelling reasons justifying a stay and that the Board of Environmental Review did not abuse its discretion in issuing the temporary stay order pending the appeal from the Director's Consent and Abatement Order.

As to the bond, it is noted that the filing of an appeal to the Environmental Board of Review does not automatic-

[8]EP Reg. 10-05, EP Reg. 30, EP Reg. 32.

ally suspend a stay execution of the action appealed from. R. C. 3745.04, EBR Reg. 3-10(A). Also, EBR Reg. 3-10-1 (B) provides in pertinent part as follows:

"EBR-§3-10-1. *Bonds.*

"(A) Since orders of the Director are not automatically stayed on appeal, if the Board determines a stay to be necessary, the Board, upon a motion, may order the posting of a bond * * *.

"(B) The Board, prior to setting bond, shall take evidence upon affidavit or hearing to the pecuniary losses or required expenditures to prevent losses during the time interval of the appeal process before the Board. The total value of any project involved in an appeal is not determinative of the amount of the bond to be set by the Board. * * * nor shall the ordinary on-going expenses of the project appealed be considered as pertinent to the determination of bond. The amount of the bond shall be determined exclusively by extraordinary expenditures or losses incident to the suspension of the project resulting from the Board's order to stay.

"(C) The Board will not require bond where to require it would have the effect of denying Appellants their right to review of administrative actions appealable to the Board under Chapter 3745 of the Revised Code."

The validity of the standards of EBR Reg. 3-10-1(B) for determining the amount of a bond is not being challenged in this appeal. We only have before us the issue of whether the Board violated EBR Reg. 3-10-1(B) in setting the bond in the instant case.

Republic alleges that it will suffer various losses if it is not allowed to operate Battery No. 1 during the pendency of the appeal before the Board. Inasmuch as we are not dealing with an existing source which has been in operation but are concerned with a new source which was installed without a permit and which has never been in operation, we conclude that the expenses of maintaining Battery No. 1 in a standby condition during the pendency of the appeal before the Board are not considered extraordinary expenses or losses incident to the suspension of

the project resulting from the Board's order to stay. Under these circumstances, we cannot say that the Board abused its discretion in setting a nominal bond.

Furthermore, since the Ohio Environmental Protection Act allows persons aggrieved or adversely affected the right to maintain actions for the enforcement of the provisions of the Environmental Protection Act, a high bond cannot be used to frustrate this right. The practical effect of an unwarranted high bond accompanying a stay order would be to nullify the stay order during the appeal period especially when a non-profit public interest group is involved. Public interest groups cannot be compelled to make extraordinarily large bonds which would frustrate their right to challenge an allegedly illegal administrative act. EBR Reg. 3-10-1(C).

For the foregoing reasons, we conclude that the Board of Environmental Review did not abuse its discretion in issuing the stay order nor in setting the $5,000 bond. Therefore, Republic's appeal is not well taken.

The stay order and the $5,000 bond set by the Environmental Board of Review are supported by reliable, probative and substantial evidence and are in accordance with law and are affirmed.

*Judgment affirmed.*

JACKSON, C. J., and SILBERT, J., concur.

SILBERT, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.